UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OTIS MYLES,   No. 07-11751

    Petitioner,   District Judge Paul D. Borman

v.   Magistrate Judge R. Steven Whalen

CINDI CURTIN,

    Respondent.
_____/

# REPORT AND RECOMMENDATION

Petitioner Otis Myles has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that the petition be DENIED.

## I.   PROCEDURAL BACKGROUND

Petitioner was convicted at a bench trial in the Wayne County, Michigan Circuit Court, the Honorable Ulysses W. Boykin, presiding, of one count of first degree criminal sexual conduct, M.C.L. § 750.520b, and one count of second degree criminal sexual conduct, M.C.L. § 750.520c. He was sentenced to 11 years and 3 months to 30 years for the CSC I, and 3 years and 2 months to 15 years for the CSC II, both sentences to run concurrently.

Petitioner appealed by right to the Michigan Court of Appeals, which affirmed his convictions on June 27, 2006 in an unpublished *per curiam* opinion. The Michigan Supreme Court denied leave to appeal on December 13, 2006.

On April 20, 2007, Petitioner filed a *pro se* petition for writ of habeas in this

Court, raising the following issues, all of which were exhausted in the Michigan courts:

> I. Petitioner received ineffective assistance of counsel and is entitled to a new trial.
>
> II. The prosecutor's failure to have Petitioner tested for sexually transmittable diseases as ordered by the court violated his due process rights to a fair trial and the production of exculpatory evidence.
>
> III. Petitioner's conviction was against the great weight of the evidence.

On July 1, 2009, this Court appointed counsel for Petitioner, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. Through counsel, Petitioner then filed a motion for appointment of an expert witness and for investigative services. The Court granted the request for appointment of Dr. Jack Sobel as an expert witness, but denied the request for further investigative services.

On April 15, 2010, Petitioner filed a Renewed Motion for Appointment of Investigator and Brief in Support of Petition for Writ of Habeas Corpus [Docket #20].[1]

## II. FACTS

The Michigan Court of Appeals summarized the facts adduced at trial as follows:

> "Defendant's convictions arose out of the alleged sexual abuse of the daughter and niece of defendant's live-in girlfriend. Defendant and his girlfriend resided in a house on Kellogg Street in the City of Detroit during the time frame these acts are alleged to have occurred. During the time period in which defendant resided with his girlfriend, he is alleged to have engaged in sexual acts with his girlfriend's daughter, who reported the incidents to adults but later recanted out of fear of reprisal from defendant. Each time defendant sexually assaulted either of the minors he reportedly told them not to tell anyone. Right after defendant allegedly committed a sexual assault on his girlfriend's niece, her daughter came into the room and inquired what had happened. When the niece responded that defendant had 'touched her,' the daughter stated 'he touches me too.'"

---

[1] Petitioner requested that the Court grant the motion for an investigator "or, in the alternative, consider [the motion] as his supplemental brief."

> "Defendant was charged with one count of first-degree criminal sexual conduct for assaulting the niece, who was thirteen at the time of the alleged incidents, and with two counts of first-degree criminal sexual conduct (CSC) against the daughter, who was five years old. Following a bench trial, the trial court found defendant guilty of CSC I for the sexual assault on the niece and not guilty of two counts of CSC I but guilty of one count of CSC II for the sexual assault on the daughter."

At trial, Dr. Sanford Vieder testified that he examined the niece on June 28, 2003, and determined that she had Trichomoniasis, a sexually transmitted disease. While he could not determine with any precision when she contracted this disease, he said that she could have become infected one or two months before he examined her.

Petitioner asserted an alibi defense, and also challenged the daughter's credibility by way of her prior denials that the abuse occurred. In terms of the alibi defense, Plaintiff presented evidence that close to the time of the alleged assaults, he resided at a church mission, where he was not permitted to leave. Petitioner testified that he left his girlfriend's home on Kellogg Street to reside at the church mission on or about May 23, 2003. In his direct appeal, Petitioner argued that his trial attorney was constitutionally ineffective for not calling witnesses who would testify to his residence at the mission. Rejecting this argument, the Court of Appeals stated:

> "Defendant's arguments lack merit due to the fact that defendant's alleged alibi would not have proven that he did not assault the older victim. That victim alleged that the abuse occurred in May or June 2003, and defendant himself testified that he left the home on Kellogg on or about May 23, 2003. Trial counsel cannot be faulted for failing to present testimony that would not have exonerated defendant."

As to the daughter's credibility, Petitioner argued in his appeal that his attorney was ineffective for not calling witnesses that would testify to the daughter's denials that abuse had occurred. The Court of Appeal rejected this argument as well:

> "Regarding the younger victim's previous statements that defendant had not assaulted her, the prosecution did not deny that this victim made such statements, and the victim never denied making them. Thus, testimony

indicating that she had previously denied being assaulted by defendant would have been, at most, cumulative. Trial counsel cannot be faulted for failing to present testimony that would have been cumulative."

Prior to trial, the judge entered a written order that Petitioner be "tested for the presence of the disease trichomoniasis whether active or in the past...." However, Petitioner was not tested. On appeal, the prosecutor stated that upon learning that neither the City nor County health departments would test Petitioner, the matter was brought before the trial judge, who orally rescinded the order for testing. The Court of Appeals held that "a court speaks through its written orders," and considered the written order for testing as the last valid order on the subject. However, the Court of Appeals rejected the Petitioner's prosecutorial misconduct argument:

> "The question, then, is whether the failure to test for Trichomoniasis was outcome determinative. Defendant does not present evidence or even argue that the results of the test would have been negative. Therefore, it cannot be concluded that the results of the test would have produced exculpatory evidence that would have changed the result of the trial. As such, defendant's claim of prosecutorial misconduct must fail."

The Michigan Supreme Court denied leave to appeal, with Justice Cavanagh writing the he "would remand for performance of testing as originally ordered by the trial court."

After counsel was appointed for Petitioner, this Court granted his request to appoint Dr. Jack Sobel as his expert witness, presumably to determine whether Petitioner could now be tested for trichomoniasis.[2] In his affidavit, appended to Petitioner's renewed motion for appointment of investigator [Docket #20], Dr. Sobel stated:

> "The trial court ordered that Mr. Myles be tested to determine whether he had trichomoniasis, but the testing was never performed. It is impossible to test Mr. Myles now and determine whether he would have tested positive

---

[2] In appointing Dr. Sobel, I essentially granted the same remedy suggested by Justice Cavanagh in the Michigan Supreme Court's order denying leave to appeal.

for trichomoniasis in June 2003."

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -
>
> a. resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> b. resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams* v *Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. Under subsection (d), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413. *Williams* further held that a state

court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id*. In *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), the Supreme Court stated that a "state court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner."

## IV. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In this case, Petitioner claims that his trial lawyer was constitutionally deficient because he did not seek out and call witnesses who would have supported his claim that

he resided in a church mission after May 23, 2003, and witnesses who would have testified that the daughter had made statements denying that any sexual assault had occurred. It is on the second prong of the *Strickland* test–prejudice–that Petitioner's claims falter. Indeed, the Court may apply the *Strickland* test in inverse order, determining first whether, without regard to the quality of counsel's performance, the Petitioner suffered prejudice:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.,* at 697.

The Petitioner himself testified that he did not leave the Kellogg Street residence and move to the mission until May 23, 2003. Indeed, the evidence that Petitioner did reside at the mission after that date was uncontroverted, and assuming that the testimony of the uncalled witnesses was consistent with the Petitioner's testimony, it would have at best been cumulative. But more importantly, as the Court of Appeals pointed out, the testimony would not have rebutted the theory, supported by the daughter's testimony, that the sexual assault occurred *before* May 23, 2003, while Petitioner was still living on Kellogg Street. In other words, the proposed testimony would not have been exculpatory, and thus would not have reasonably affected the outcome of the trial. "A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004)(internal citations omitted). The second prong of *Strickland* requires actual prejudice, and "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

The proposed testimony that one of the alleged victims made statements denying

that the abuse had occurred would have been cumulative to unrebutted evidence already before the jury, and as the Court of Appeals noted, neither the daughter nor the prosecutor ever denied that she had in fact made statements inconsistent with her trial testimony. *See United States v. Schaflander,* 743 F.2d 714, 718 (9th Cir.1984), *cert. denied,* 470 U.S. 1058 (1985) (counsel's failure to present cumulative evidence is not prejudicial).

Therefore, the Court of Appeals did not unreasonably apply *Strickland* in rejecting Petitioner's claim of ineffective assistance of counsel.

### B. Failure to Test for Sexually Transmitted Diseases

The trial court ordered, in writing, that the Petitioner be tested for Trichomoniasis. The prosecutor did not have the Petitioner tested. I will therefore assume, for purposes of this discussion, that the prosecutor violated the trial court's order. But the violation of a state court's order will not, by itself, support a writ of habeas corpus under § 2254. Rather, the Petitioner must show that the violation deprived him of an established right secured by the federal constitution.

In *Brady v. Maryland,* 373 U.S. 83, 87 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." This case is not, strictly speaking, a *Brady* issue, since the prosecutor was not in possession of exculpatory test results. Instead, this would more appropriately fall within the rubric of the state's duty to preserve material and exculpatory evidence. *See Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (the Constitution imposes at least a limited "obligation" on the police "to preserve evidence ... [that] could form the basis for exonerating the defendant").

In *Youngblood*, the Court held that where the prosecution fails to preserve evidence that is material and exculpatory, it is irrelevant whether the government acted in good faith or bad faith. However, the Court held that the analysis was different when the unpreserved evidence was only *potentially* exculpatory:

> "The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *Trombetta, supra,* 467 U.S., at 486, 104 S.Ct., at 2532, that '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.' Part of it stems from our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause, see *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. *Id*. at 57-58.

Had the Petitioner been tested before trial, the results may or may not have been exculpatory. In other words, as in *Youngblood*, the Petitioner "could have been subjected to tests, the results of which might have exonerated" him. Therefore, the Petitioner cannot show a Due Process violation unless the prosecutor acted in bad faith. "Negligence, even gross negligence, on the part of the government does not constitute bad faith." *United States v. Branch*, 537 F.3d 582, 590 (6th Cir. 2008). Rather, Petitioner must show" that the Government intentionally [acted] to gain some tactical advantage"

over him. *Youngblood* at 57, quoting *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

It cannot be said that the prosecutor acted in bad faith in not having the Petitioner tested. He discovered that the testing could not be done at the City or County Health Departments, and therefore brought the matter before the trial judge, with full disclosure to the defense. According to the prosecutor, the judge orally rescinded his order for testing, although, as stated, whatever oral statement the judge made did not affect or rescind the written order as a matter of law. Nevertheless, these facts do not support a finding that the prosecutor acted in bad faith to subvert the process with the intent to suppress exculpatory evidence or to "gain some tactical advantage." *See California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (rejecting a Due Process challenge where "[t]he record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence").

Petitioner's reliance on *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009), is unavailing. *Moldowan* was a civil case brought under 42 U.S.C. § 1983, in which the plaintiff claimed that the police suppressed exculpatory evidence, in the form of an undisclosed witness statement, in his first trial for kidnapping, assault with intent to commit murder, and criminal sexual conduct. The Court, noting *Youngblood's* distinction between *clearly* exculpatory and *potentially* exculpatory evidence, held that under the facts of the case, the plaintiff was not required to show that the police acted in bad faith in failing to disclose the witness's statement. The Court described the evidence as follows:

> "Construing these facts in the light most favorable to Moldowan, it is evident that Burroughs' statements cast serious doubt on, if not entirely discredit, Fournier's identification of Moldowan as one of her attackers, an issue that undoubtedly was one of the most important elements of the state's case. Burroughs' statements thus should have been disclosed to the defense as they undoubtedly 'would tend to exculpate' Moldowan. See Brady, 373

-10-

U.S. at 88, 83 S.Ct. 1194." *Moldowan*, 578 F.3d at 382.

Nothing in *Moldowan* undercuts the Supreme Court's holding in *Youngblood* and *Trombetta*. In the present case, unlike *Moldowan*, the evidence that might have been gained from testing the Petitioner will forever remain *possibly* exculpatory.

Accordingly, Petitioner is not entitled to a writ of habeas corpus based on a Due Process violation.

### C. Great Weight of the Evidence

Petitioner argues here, as he did in state court, that his convictions were against the great weight of the evidence.

Issues of state law are not cognizable on federal habeas review. *Estelle v McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 Led.2d 385 (1991). As long as the evidence is sufficient as a matter of Due Process–and Petitioner does not claim otherwise– a claim that the verdict was against the weight of the evidence presents a pure state law issue. *See Douglas v. Hendricks,* 236 F.Supp.2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub,* 194 F.Supp.2d 629, 648 (E.D.Mich.2002) ; *Correa v. Duncan,* 172 F.Supp.2d 378, 381 (E.D.N.Y.2001); *cf. Tibbs v. Florida,* 457 U.S. 31, 44, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.' " *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir.1985).

### V. CONCLUSION

For these reasons, I recommend that the Petition for Writ of Habeas Corpus be DENIED. I further recommend that the Court DENY A CERTIFICATE OF APPEALABILITY because the Petitioner has not made a substantial showing of the

denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 2, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys

and/or parties of record by electronic means or U.S. Mail on September 2, 2010.

                                                  S/G. Wilson
                                                  Judicial Assistant