UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OTIS MYLES,

       Plaintiff,

                            Case No. 07-cv-11751

v.

                            Paul D. Borman
                            United States District Judge

CINDI CURTIN,

                            R. Steven Whalen
       Defendant.                  United States Magistrate Judge

_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (2) DISMISSING THE WRIT OF HABEAS CORPUS PETITION, AND (3) DENYING A CERTIFICATE OF APPEALABILITY**

Now before the Court is Otis Myles' ("Petitioner") Petition for a Writ of Habeas Corpus (Dkt. No. 1). The Court referred this matter to Magistrate Judge R. Steven Whalen, who filed a Report and Recommendation ("R&R") on September 2, 2010 (Dkt. No. 22), recommending that the Petition be denied. Petitioner filed objections on September 13, 2010 (Dkt. No. 23). Respondent did not file a response to Petitioner's Objections, and the time to do so has expired.

For the reasons stated below, the Court will deny Petitioner's Objections, adopt Magistrate Judge R. Steven Whalen's Report and Recommendation, and dismiss the Petition for a Writ of Habeas Corpus.

**I. BACKGROUND**

Petitioner was convicted of one count of first-degree criminal sexual conduct ("CSC I"), Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual conduct ("CSC II"),

1

Mich. Comp. Laws § 750.520c, after a bench trial in Wayne County Circuit Court. Petitioner was sentenced to 135 months to 30 years for the CSC I conviction, and 38 months to 15 years for the CSC II conviction.

Petitioner appealed his conviction to the Michigan Court of Appeals, arguing that he received ineffective assistance of counsel, that the prosecutor's failure to test him for a sexually transmitted disease constituted prosecutorial misconduct, and that his conviction was against the great weight of the evidence. *People v. Myles*, Nos. 260806 and 260809, 2006 WL 1751842 (Mich. Ct. App. June 27, 2006). The court of appeals upheld Petitioner's convictions. *Id*. The Michigan Supreme Court denied leave to appeal. *People v. Myles*, 477 Mich. 967 (2006).

The relevant facts were summarized in the opinion by the Michigan Court of Appeals:

> Defendant's convictions arose out of the alleged sexual abuse of the daughter and niece of defendant's live-in girlfriend. Defendant and his girlfriend resided in a house on Kellogg Street in the City of Detroit during the time frame these acts are alleged to have occurred. During the time period in which defendant resided with his girlfriend, he is alleged to have engaged in sexual acts with his girlfriend's daughter, who reported the incidents to adults but later recanted out of fear of reprisal from defendant. Each time defendant sexually assaulted either of the minors he reportedly told them not to tell anyone. Right after defendant allegedly committed a sexual assault on his girlfriend's niece[,] her daughter came into the room and inquired what had happened. When the niece responded that defendant had "touched her," the daughter stated "he touches me too."
>
> Defendant was charged with once count of first-degree criminal sexual conduct for assaulting the niece, who was thirteen at the time of the alleged incidents, and with two counts of first-degree criminal sexual conduct . . . against the daughter, who was five years old.

*Myles*, 2006 WL 1751842 at *1-2.

Magistrate Judge Whalen noted the following pertinent facts:

> At trial, Dr. Sanford Vieder testified that he examined the niece on June 28, 2003, and determined that she had Trichomoniasis, a sexually transmitted disease. While he could not determine with any precision when she contracted this disease, he said that she could have become infected one or two months before he examined her.
>
> Petitioner asserted an alibi defense, and also challenged the daughter's credibility by way of her prior denials that the abuse occurred. In terms of the alibi defense, [Petitioner] presented evidence that close to the time of the alleged assaults, he resided at a church mission, where he was not permitted to leave. Petitioner testified that he left his girlfriend's home on Kellogg Street to reside at the church mission on or about May 23, 2003. In his direct appeal, Petitioner argued that his trial attorney was constitutionally ineffective for not calling witnesses who would testify to his residence at the mission.
>
> [. . . .]
>
> Prior to trial, the judge entered a written order that Petitioner be "tested for the presence of the disease trichomaniasis whether active or in the past...." However, Petitioner was not tested. On appeal, the prosecutor stated that upon learning that neither the City nor County health departments would test Petitioner, the matter was brought before the trial judge, who orally rescinded the order for testing. The Court of Appeals held that "a court speaks through its written orders," and considered the written order for testing as the last valid order on the subject. However, the Court of Appeals rejected the Petitioner's prosecutorial misconduct argument[.]

(R&R at 3-4).

The Magistrate Judge granted Petitioner's request to have Dr. Jack Sobel appointed as an expert witness (Dkt. No. 18). On December 23, 2009, Dr. Sobel signed an affidavit stating:

> The trial court ordered that Mr. Myles be tested to determine whether he had trichomoniasis, but the testing was never performed. It is impossible to test Mr. Myles now and determine whether he would have tested positive for trichomoniasis in June 2003.

(Aff. of Jack Sobel ¶ 5 (Dkt. No. 20)).

## II. STANDARD OF REVIEW

3

When a party objects to a portion of a Magistrate Judge's report and recommendation, the Court must review that portion *de novo*. Fed. R. Civ. P. 72(b).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies in this case. Accordingly, the Court may grant a petition for a writ of habeas corpus only if the state court decision: "(1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Goodwin v. Johnson*, --- F.3d ----, 2011 WL 181468, *4 (6th Cir. 2011) (citing 28 U.S.C. § 2254(d)). A state court decision is contrary to Supreme Court precedent when "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000). A state court decision was unreasonable based on the facts "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[T]he application must be found to be 'objectively unreasonable'" *Goodwin*, 2011 WL 181468 at *4. "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, --- U.S. ----, 130 S.Ct. 1855, 1862 (2010) (citations omitted).

### III. ANALYSIS

Petitioner raised three issues in his Petition, but only addressed two issues in his objections.

(Pet.'s Obj. ¶ 1). Specifically, Petitioner has objected to Magistrate Judge Whalen's findings with regard to his ineffective assistance of counsel and prosecutorial misconduct claims. Accordingly, with regard to Petitioner's third claim – that his conviction was against the great weight of the evidence – the Court declines review and affirms Magistrate Judge Whalen's findings. *See* Fed. R. Civ. P. 72.

**1. Ineffective Assistance of Counsel**

Petitioner argues that he was deprived of effective assistance of counsel because his trial counsel did not call witnesses who would have supported Petitioner's testimony at trial.

Effective assistance of counsel is guaranteed by the Sixth Amendment. *Stickland v. Washington*, 466 U.S. 668, 685 (1984). To show that counsel's representation was ineffective, Petitioner must satisfy two prongs: "inadequate performance by defense counsel and prejudice resulting from that deficient performance." *Goodwin*, 2011 WL 181468 at *5 (citing *Strickland*, 466 U.S. at 687). The first prong requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Scrutiny of counsel's performance is highly deferential, however; every effort must be made to eliminate the distorting effects of hindsight." *Goodwin*, 2011 WL 181468 at *5. The second prong requires Petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Petitioner argues that his trial counsel's failure to call witnesses who would have corroborated his alibi defense – that he left the Kellogg Street house on May 23, 2003 – constituted ineffective assistance of counsel. The older victim testified that Petitioner assaulted her between

May and June of 2003. Petitioner also argues that his counsel was deficient for failing to call witnesses who would have testified that the younger victim previously recanted her testimony that Petitioner had assaulted her.

Magistrate Judge Whalen found that the Michigan Court of Appeals correctly applied *Strickland*, and noted that Petitioner's argument fails to satisfy the "prejudice" prong of the *Strickland* test:

> The Petitioner himself testified that he did not leave the Kellogg Street residence and move to the mission until May 23, 2003. Indeed, the evidence that Petitioner did reside at the mission after that date was uncontroverted, and assuming that the testimony of the uncalled witnesses was consistent with the Petitioner's testimony, it would have at best been cumulative. But more importantly, as the Court of Appeals pointed out, the testimony would not have rebutted the theory, supported by the daughter's testimony, that the sexual assault occurred *before* May 23, 2003, while Petitioner was still living on Kellogg Street. In other words, the proposed testimony would not have been exculpatory, and thus would not have reasonably affected the outcome of the trial. . . . .
>
> The proposed testimony that one of the alleged victims made statements denying that the abuse had occurred would have been cumulative to unrebutted evidence already before the jury, and as the Court of Appeals noted, neither the daughter nor the prosecutor ever denied that she had in fact made statements inconsistent with her trial testimony.

(R&R at 7-8).

Petitioner argues that the proposed testimony would not have been "cumulative," and that Magistrate Judge Whalen's analysis is contrary to *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008). In *Brown*, the Sixth Circuit found that potentially exculpatory evidence was not "cumulative," and that failure to present it at trial satisfied the *Strickland* standard for ineffective assistance of counsel. *Id*. at 432-34. However, unlike the instant case, the evidence in *Brown* was not part of the record

6

before the Michigan Court of Appeals. *Id*. at 428-29. Because the evidence was not in the record before the Michigan courts, the Sixth Circuit noted that the AEDPA standard did not apply and reviewed the ineffective assistance of counsel claim *de novo*. *Id*.

The content of the proposed testimony in Petitioner's case was before the Michigan Court of Appeals, which properly applied the *Strickland* test. *See Myles*, 2006 WL 1751842 at *2. Therefore, Magistrate Judge Whalen's review was properly limited to the standards set forth by the AEDPA.

The Court agrees with the analysis set forth by the Michigan Court of Appeals and Magistrate Judge Whalen. After properly identifying the standard set forth in *Strickland*, the Michigan Court of Appeals found that Petitioner's arguments lacked merit because the "alleged alibi would not have proven that he did not assault the older victim." *Myles*, 2006 WL 1751842 at *3. The niece testified that the assault occurred in May or June of 2003, even if more evidence were presented that Petitioner was not present at the house after May 23, 2003, there was still ample time in which the assault could have occurred. Thus, "[t]rial counsel cannot be faulted for failing to present testimony that would not have exonerated defendant." *Id*. Regarding the proposed testimony that the younger victim had previously denied Petitioner's sexual assaults, the Court of Appeals noted that "the prosecution did not deny that this victim made such statements, and the victim never denied making them." *Id*. The Court of Appeals concluded that "there is no reasonable probability that but for the failure to present the testimony of the witnesses cited by defendant, the outcome of the trial would have been different." *Id*. The Court does not find this analysis to be objectively unreasonable or contrary to established federal law.

**2. Prosecutorial Misconduct**

Petitioner argues that the prosecutor's failure to test him for Trichomaniasis, as ordered by the trial court, constitutes prosecutorial misconduct. Petitioner relies on *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009), which noted that "[u]nlike the destruction or concealment of merely 'potentially useful' evidence, the loss of 'materially exculpatory' evidence directly threatens the fundamental fairness of a criminal trial, and thus undoubtedly implicates the Due Process Clause." *Id.* at 385. However, in his Objections, Petitioner refers to the testing as "potentially exculpatory evidence." (Pet.'s Obj. ¶ 5). This undermines Petitioner's argument with regard to *Moldowan*, which explicitly distinguished evidence that has a "potential" to be used and evidence that is clearly "material" to a defendant's exoneration. Thus, by conceding that the evidence is only "potentially" exculpatory, the *Moldowan* decision supports the Court of Appeals' finding that the "concealment" of this evidence was not a due process violation. "[O]ne cannot state a due process claim simply by pointing to 'the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *U.S. v. Turner*, 602 F.3d 778, 787 (6th Cir. 2010) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)). Where evidence is only potentially exonerating, a criminal defendant must show "bad faith" on the part of the state. *Youngblood*, 488 U.S. at 58.

The Michigan Court of Appeals first found no apparent bad faith on the part of the prosecution, because the "city and county health care facilities would not test defendant for Trichomoniasis." *Myles*, 2006 WL 1751842 at *3. The court then correctly determined the issue to be "whether the failure to test for Trichomoniasis was outcome determinative." *Id.* The court further stated:

> Defendant does not present evidence or even argue that the results of
> the test would have been negative. Therefore, it cannot be concluded

8

>that the results of the test would have produced exculpatory evidence that would have changed the result of the trial. As such, defendant's claim of prosecutorial misconduct must fail.

*Id*. at *3-4. The Court does not find this analysis to be objectively unreasonable or contrary to established federal law.

### IV.  CONCLUSION

For the reasons stated above, the Court will:

(1) **DENY** Petitioner's Objections,

(2) **ADOPT** Magistrate Judge R. Steven Whalen's Report and Recommendation,

(3) **DISMISS** the Petition for a Writ of Habeas Corpus, and

(4) **DENY** a Certificate of Appealability, because the Petitioner has not made a substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**


S/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated:  February 24, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 24, 2011.

S/Denise Goodine  
Case Manager